# THE VON HAMM-YOUNG COMPANY, LIMITED, *v.* THE HAWAII GARAGE, LIMITED.

## No. 1189.

### EXCEPTIONS FROM CIRCUIT COURT, FOURTH CIRCUIT. HON. C. K. QUINN, JUDGE.

SUBMITTED NOVEMBER 25, 1919.          DECIDED DECEMBER 11, 1919.

KEMP, J., AND CIRCUIT JUDGES FRANKLIN AND BANKS IN PLACE OF COKE, C. J., AND EDINGS, J., ABSENT.

LANDLORD AND TENANT—*covenants—construction.*

> Covenants in a lease of land, upon the breach of which a forfeiture is claimed, must be strictly construed.

SAME—*same—same.*

> A lease provided that the acceptance of rent by the lessor should not be deemed to be a waiver by it of any breach by the lessee of any covenant therein contained. After a breach of covenants by the lessee known to the lessor the lessor accepted rent. Held that this provision of the lease prevented the acceptance of rent from being a waiver of the breach of covenant but did not prevent such acceptance from being a waiver of the right to declare a forfeiture for such breach.

SAME—*same—same.*

> A lease provided that the lessee will permit the lessor at all seasonable times to enter the leased premises and examine the state of repair and condition thereof and will repair and make good all defects of which notice shall be given within thirty days after the giving of such notice. Held that in the absence of such notice and a failure for thirty days thereafter to make repairs and remedy defects in the condition of the premises no right to declare a forfeiture for violation of the covenants to make repairs and keep the premises in a sanitary condition had been shown.

TRIAL—*conduct of trial—view and inspection.*

> In the trial of a case, jury waived, involving the question of whether or not a covenant to repair and keep in a sanitary condition had been violated it appeared that the premises at the time

of the trial were in practically the same state of repair and sanitary condition as they were when the forfeiture was declared, held not error for the trial judge to view and inspect the premises.

OPINION OF THE COURT BY KEMP, J.

On November 13, 1918, the plaintiff instituted summary proceedings in the district court of South Hilo, Hawaii, under chapter 154 R. L. 1915 for the possession of the premises involved in this cause, claiming a forfeiture by reason of the violation of certain covenants contained in the lease under which the defendant held possession of the said premises from the plaintiff. Upon a trial in the district court judgment was in favor of the defendant, from which the plaintiff prosecuted an appeal to the circuit court of the fourth judicial circuit. Trial was had in the circuit court, jury waived, where judgment was again had in favor of the defendant and plaintiff brings exceptions to this court. The lease in question was dated October 1, 1913, and provided for a term of five years but contained a clause of renewal for a like term upon the election of the lessee. The lessee had availed itself of this option and accordingly at the time of the declaration of forfeiture occupied the premises under a term which would not expire, unless forfeited, until October 1, 1923. Said lease contains among others the following covenants on the part of the lessee: "That it will also pay all taxes, rates, assessments, impositions, duties and other outgoings of every description to which the interest of the lessee in the premises hereby demised and or any interest therein hereby conveyed or any part thereof are now or may during said term or any extension thereof shall become liable, and whether the same are or shall be assessed to or be payable by law by either the lessor or lessee;" "That it will out of its own moneys during the whole of said term or

any extension thereof make, build and maintain all sewers, drains, roads and sidewalks required by law to be made, built, maintained and repaired upon or in connection with or for the use of the said premises or any part thereof and or any improvements thereon;" "That it will during said term or any extension thereof keep the said premises and all improvements thereon in a strictly, clean and sanitary condition, and observe and perform all the rules and regulations of the health authorities for the time being applicable to the said premises, and shall indemnify the lessor and its respective estates and effects against all actions, suits, damages and claims by whomsoever brought or made by reason of the non-performance or non-observance of the said rules and regulations and or of this covenant;" "That it will not suffer or make any alteration of the premises hereby demised or any improvements hereafter to be built thereon or connected therewith or any part thereof without the previous written consent of the lessor;" "That it will permit the lessor or its agent at all seasonable times during the term hereby demised or any extension thereof to enter the said premises and all improvements thereon and examine the state of repair and condition thereof, and will repair and make good all defects of which notice shall be given by the lessor within thirty (30) days after the giving of such notice." Said lease also contains the following general provisions: "Provided, however, if the lessee shall fail to pay the said rent or any part thereof within thirty (30) days after the same becomes due, whether the same shall or shall not have been legally demanded, or shall fail to faithfully observe or perform any of the covenants herein contained and on the part of the lessee to be observed and performed, or shall abandon the said premises, the lessor may at once reenter said demised premises and at its option terminate this lease without service of

notice or legal process and without prejudice to any other remedy or right of action or arrears of rent or for any proceeding upon breach of contract. And it is hereby expressly agreed and declared that the acceptance of rent by the lessor shall not be deemed to be a waiver by it of any breach by the lessee of any covenant herein contained."

As one of the grounds for forfeiture the lessor relied upon the failure of the lessee to repair the sidewalk in front of the demised premises. The evidence shows, and the court found, that the sidewalk in question was constructed of concrete and that one of the divisions 3x4 feet was cracked and depressed. The covenant of which it was claimed this was a breach provides in effect that the lessee will out of its own moneys during the whole of said term or any extension thereof, make, build and maintain all sidewalks required by law to be made, built, maintained and repaired upon or in connection with the said premises. The default of the lessee, to be a ground for forfeiture, must come strictly within the covenant. The covenant requires, as we have just shown, the lessee to make such repairs as are required by law and in the absence of a showing that the repair of said sidewalk was required by law no breach of this covenant has been shown.

Another ground of forfeiture relied upon was the alleged failure of the lessee to properly maintain the sewer which served the demised premises. In its brief the lessor has not discussed this ground of forfeiture other than to list it among the breaches of covenant relied upon. Under these circumstances we might well consider this ground of forfeiture waived. But the evidence upon this point as disclosed by the record is so overwhelmingly to the effect that the lessee did all that could be required of it in the care of the sewer that we fail to find any

ground for forfeiture for failure to properly maintain the sewer.

At the trial the lessor asserted as a ground of forfeiture the fact that the lessee had erected upon and under the sidewalk in front of the demised premises a gasoline pump and tank. There is no question of fact involved in this point it being admitted that the lessee did erect a gasoline pump upon the sidewalk, connected with a tank situated beneath the sidewalk. It is not quite clear which covenant in the lease it was claimed that this was a violation of but we assume that it was contended that it violated the covenant against the making of any alteration of the premises without the previous written consent of the lessor. This ground, like the one just discussed, has been ignored by the lessor in its brief and we could with propriety by reason of this fact treat it also as waived, but we think the undisputed facts fail to bring it within any covenant of the lease. The improvement was not upon the demised premises. The pump was situated upon the sidewalk and the tank beneath the sidewalk. If any one has a right to complain of the erection of this pump it would be the authorities having control of sidewalks and not the lessor.

The lessor also relies upon an alleged breach of the covenant by which the lessee agreed to keep said premises in a strictly clean and sanitary condition and to observe and perform all the rules and regulations of the health authorities for the time being. The court found as a fact that there had been no violation of this covenant. In this we think it was amply justified by the evidence and its finding in that regard will not be inquired into by this court.

There is a further clause in said lease, which we have quoted, which we think has a decided bearing upon these claims of the lessor and that is the clause whereby the

lessee covenants that it will permit the lessor at all sea-
sonable times to enter said premises and examine the
state of repair and condition thereof and will make good
all defects of which notice shall be given by the lessor
within thirty days after the giving of such notice.   There
is a complete failure upon the part of the lessor to show
that any notice was given to repair the sidewalk or sewer
or to remedy any condition which it deemed to be a vio-
lation of the covenant to keep the premises in strictly
clean and sanitary condition or to remove the gasoline
pump and tank.   In the absence of such notice and a fail-
ure for thirty days thereafter to remedy such condition
or repair such defect the lessor has failed to show a
ground for forfeiture for a breach of covenants.   This
provision of the lease would of course apply only to those
covenants on the part of the lessee relating to the state of
repair and condition in which the premises were to be
kept.   It is so limited by its own terms and would not
therefore apply to the remaining grounds of forfeiture
relied upon.

Another ground of forfeiture which was relied upon by
the lessor, and which it insists upon in its brief was the
removal by the lessee of a platform or balcony which it
erected inside of the building upon the demised premises
shortly after it took possession thereof under the lease.
The evidence shows that this balcony was fourteen feet
wide by forty feet long extending across one end of the
building; that it was erected upon and supported by its
own uprights and was not in any manner attached to the
building; that it was approached by a flight of stairs and
was for the accommodation of the lessee's office force
and of bins of various sizes in which were kept small
automobile parts.   It is also shown by the evidence,
which is undisputed, that some five or six months prior
to the institution of this suit the lessee removed said bal-

cony from the demised premises. The trial judge in his written decision disposed of this claim of forfeiture against lessor upon two grounds, (1) that the lessor had by its conduct waived the breach, if there was any breach, of the covenant, and (2) that the balcony did not constitute an improvement of the premises; that its removal did not constitute an alteration of improvements and therefore was no breach of covenant. Without regard to whether the trial judge was justified by the evidence in deciding this matter against the lessor upon the first ground we think there can be no question but that he was correct in his conclusion that the balcony did not constitute an improvement to the premises and that its removal therefore did not constitute a breach of the covenant.

One of the breaches of covenant, and we might say the principal one, relied upon by the lessor as a ground for forfeiture is the failure of the lessee to pay the taxes upon said premises. There is no contention that the lessee has in fact paid any of the taxes assessed against the property. On the contrary it freely admits that it has not paid them or any part thereof. The facts in connection with the return, assessment and payment of taxes, are in substance as follows: The lease in question, it will be recalled, is dated October 1, 1913; beginning with the year 1913 and including the year 1918 the lessor returned the demised premises together with other property owned or controlled by it for taxes; the property in question was only a portion of the premises held by the lessor under a lease from F. S. Lyman; the taxes upon the entire property leased by the lessor from Mr. Lyman were assessed each year to the lessor by reason of the fact that it made the tax return each year in its own name; the lessor having returned the property held by the lessee under the lease in question each year during

the existence of said lease as a part of the property held by it under the Lyman lease paid the taxes upon this entire property each year prior to the date upon which the same would become delinquent and never made an apportionment of the amount thus paid by it as between it and the lessor nor did the lessor ever demand of the lessee that it be reimbursed for the amount of taxes thus paid by it in behalf of the lessee. The lessee seeks to excuse this failure to pay the taxes on the demised premises upon several grounds which may be stated as follows: (1) that the lessor having voluntarily returned the property for taxation and having voluntarily paid the taxes assessed upon said return the failure of the lessee to reimburse the lessor for the taxes thus paid does not constitute a breach of the covenant to pay taxes; (2) that if it should be held that a failure to reimburse the lessor for the taxes thus paid would constitute a breach of the covenant to pay taxes then a demand upon lessee by the lessor is a prerequisite to its·right to declare a forfeiture for such breach, and (3) that if neither of the two above contentions is sustained the lessor has by its conduct and the acceptance of rent after the breach waived its right to declare a forfeiture. In support of the first contention the lessee has cited *Byrane* v. *Rogers,* 8 Minn. 247, 251, where the court said: "Should the landlord pay the tax and then demand of the tenant its reimbursement to him, a refusal on the part of the tenant would give the landlord no right of reentry because such refusal would be no violation of covenant to pay the tax, and covenants, upon the breach of which forfeitures are claimed, must be strictly construed. A covenant to pay a tax, and a covenant to reimburse another who has paid it would be very different both in terms and effect." The doctrine to the effect that covenants, the violation of which gives the right of reentry and forfeiture, must be

strictly construed is well stated in the *Elevator Case,* 17 Fed. 200, as follows: "As a proposition pervading this doctrine of the right of reentry by the forfeiture of a lease of land, it is to be observed that the power to be exercised is a very strong power, and it is one which is exercised without the judgment of a court of justice or of anybody else but the party who is exercising it. The party determines for himself whether he has the right of reentry, without any resort to a court of justice. This is always a harsh power. It has always been considered that it was necessary to restrain it to the most technical limits of the terms and conditions upon which the right is to be exercised. Hence it is that the old common law provided in this class of contracts that it was the duty of the court to see that no injustice was done. It is reasonable, it is natural, that when a contract puts into the power of one man to say that under certain contingencies, of which he is to be the judge, he shall enter upon the house or home or property of another, and eject him instantly, and take possession,— it is reasonable, it is proper, that the contract and the acts which justify such a course of conduct should be construed rigidly against the exercise of the right." We must then look to the covenant to see whether or not there is anything contained therein of which the failure of the lessee to pay the taxes under the circumstances of this case constituted a breach.

The covenant obligated the lessee to pay all taxes to which the interest of the lessee in the demised premises is now or during said term or any extension thereof shall become liable and whether the same is or shall be assessed to or be payable by law by either the lessor or the lessee. We think that this covenant placed upon the lessee the obligation to pay the taxes even though they were assessed to and payable by law by the lessor. It

does not appear that the lessee made any objection to the lessor returning the property as it did for taxes. The lessee could have made a separate return of the property for taxes and thereby enabled it to make the payment itself. Its failure to make such return cannot now be set up as an excuse for not making the payment.

Lessee's next excuse for not having paid the taxes is that under the circumstances of this case a demand by the lessor for reimbursement is a prerequisite to its right to declare a forfeiture. That a demand for the payment of taxes is not a prerequisite to the right to declare a forfeiture for their nonpayment has been held by this court in *Cornwell* v. *Colburn,* 15 Haw. 632, and *Kanaka-nui* v. *De Fries,* 21 Haw. 123. The lessee admits that such holding is now the law of this jurisdiction but insists that since the lessor voluntarily paid the taxes the rule announced by these cases should not control in this case. As we have already said, the lessee could have made a separate return of the property for taxes and thereby put itself in position to comply with the covenant contained in the lease. This it failed to do and we cannot see how this fact would change the rule announced in the cases above cited. Our opinion is therefore that the failure of the lessee to pay the taxes upon the demised premises constituted a breach of the covenant contained in said lease obligating it to pay said taxes and would justify the lessor in declaring a forfeiture unless, as further contended by the lessee, the acceptance of rent after the breach and other conduct of the lessor waived its right to declare a forfeiture for such breach.

This brings us then to a discussion of the main question which has been presented by the parties in their briefs, namely, the question of whether or not the lessor waived its right to declare a forfeiture in this case. In

the discussion of this question we will also include another ground of forfeiture relied upon by the lessor, the facts of which are as follows: In December, 1915, the lessor leased to the lessee another tract of land adjoining the premises in question. Shortly thereafter, in the early part of 1916, the lessee erected a building upon the premises described in this second lease and within a few weeks thereafter connected the two buildings by cutting a door in the wall of the building situated upon the premises involved in this suit. The covenant in the lease of which it is claimed the cutting of this door constituted a breach provides in effect that the lessee will not suffer or make any alterations of the premises hereby demised or any improvements thereon without the previous written consent of the lessor. It is not contended that the lessee procured the written consent of the lessor before cutting this door in the wall of the building. It is the contention of the lessee that the lessor has waived its right to declare a forfeiture on that ground by reason of the same facts which it urges as a waiver of its right to declare a forfeiture for the nonpayment of taxes. The evidence as to whether or not the lessor knew that this door had been cut is conflicting. The lessor's manager, Mr. West, testified positively that he did not know of the cutting of said door until in October, 1918, while the lessee's manager, Mr. Forbes, testified that before the door was cut he, in company with Mr. Beers and Mr. Heen, called upon Mr. West and procured from him his oral consent to the cutting of said door. The trial judge in his written decision found the facts in accordance with the testimony of Mr. Forbes. If Mr. West gave his oral consent to the cutting of the door in 1916 and continued to do business next door to the premises in question from that time down to the time of the trial of this case, as the evidence shows he did, it is inconceivable that he did

not know of the fact that the door had been cut. We do not hold that the procuring of the oral consent to cut the door was a compliance with the terms of the lease which required the lessee to procure the written consent of the lessor before making any alterations. We think that the cutting of the door without procuring the written consent of the lessor constituted a breach of the covenant and would justify the lessor in declaring a forfeiture unless it has by the acceptance of the rent and its conduct otherwise waived its right to declare such forfeiture. The lessor insists that by reason of that provision in the lease to the effect that the acceptance of rent by the lessor shall not be deemed to be a waiver by it of any breach by the lessee of any covenant contained in said lease the acceptance of rent by the lessor cannot be considered in determining whether or not the lessor has waived its right to declare a forfeiture. It is clear that unless the clause just quoted prevents it, the acceptance of rent accruing after the breach of the covenant was known to the lessor constituted a waiver of its right to declare a forfeiture. The evidence shows that the last breach of the covenant to pay taxes occurred in May, 1918, and we have seen that the breach of covenant against making alterations in the improvements occurred during the year 1916 and said breaches were known to the lessor at the time they occurred. Notwithstanding this fact the lessor continued to accept rent from the lessee and recognize it as a tenant up to and including the month of October, 1918. Counsel for the lessee in their very able brief have drawn a distinction between the waiver of a breach of covenant and a waiver of the right to declare a forfeiture. In this connection it is pointed out that a breach and a forfeiture are by no means synonymous and that the former can exist without the latter. The lease in question gives the lessor the option of

declaring a forfeiture for a breach of covenant but does not compel it to declare such forfeiture and provides that an exercise by it of its option to declare a forfeiture shall not prejudice its right to any other remedy or action for breach of contract. In this connection the lessee contends that the clause in the lease providing that acceptance of rent shall not be deemed to be a waiver of the breach of any covenant therein contained must under the rule requiring a strict construction of such contracts be confined to its exact language and not extended to include a waiver of the right to declare a forfeiture. With this contention we agree and hold that the acceptance of rent after the breaches of the covenants for the payment of taxes and the making of alterations in improvements, while not constituting a waiver of the lessor's right of action for breach of contract, did waive its right to declare a forfeiture for the breach of covenants. The following authorities recognize the principle that the waiver of a breach of covenant does not imply a waiver of a forfeiture and that the waiver of a forfeiture does not imply a waiver of a breach of covenant. *Rouiaine* v. *Simpson,* 84 N. Y. S. 875; *Conger* v. *Duryee,* 90 N. Y. 601; *Brooks* v. *Rodgers,* 12 So. (Ala.) 61.

During the course of the trial the trial judge viewed the premises in question, to which action the lessor excepted. The evidence adduced prior to the viewing of the premises by the judge was to the effect that the premises were at that time in about the same condition as they were at the time of the declaration of forfeiture. Under these circumstances we think it was entirely proper for the trial judge to view the premises. It is not an uncommon practice in this jurisdiction for juries to view premises involved in the matter on trial under similar circumstances and we can see no reason why in a jury waived case the trial judge should not be permitted under such circumstances to view the premises.

Exception was also taken to the admission in evidence of the summons and declaration in a prior action brought in the district court for summary possession of the premises in question in this suit. The object of the lessee in offering this evidence was to show that the lessor had undertaken to procure a forfeiture of the premises in question on certain grounds which did not include the nonpayment of taxes and that such a declaration constituted a waiver of its right to declare a forfeiture for the nonpayment of taxes. The evidence was admitted but the trial judge in his written decision held that this did not constitute a waiver by the lessor of its right to declare a forfeiture for the nonpayment of taxes. Under these circumstances we think it is immaterial whether the evidence was admissible or not. The court having refused to consider it as evidencing a waiver of the right to declare a forfeiture the lessor was not injured and no error was therefore committed.

The lessor also excepted to the admission in evidence of statements by the witness Forbes as to the location of the sewer serving the demised premises, it being the contention of the lessor that the testimony of said witness was based upon hearsay. The witness on direct examination having testified in detail as to the location of the sewer was asked upon his cross-examination as to where he got his information. His reply was that he got his information from the plans on file in the board of health office. Thereupon a motion was made to strike all of his testimony as to the location of the sewer. Before ruling upon this motion the trial judge asked the witness if he had ever seen the sewer being worked upon, to which he replied in the affirmative and the motion to strike was thereupon overruled. In this we find no error as it does not appear, as contended by the lessor, that the witness' information was obtained entirely from hearsay.

Finding no merit in the exceptions the same are over-ruled.

*Carlsmith & Rolph* for plaintiff.

*Russell & Patterson* for defendant.