## HAWAIIAN HOMES COMMISSION v. LOUIS BUSH.

### No. 4024.

## HAWAIIAN HOMES COMMISSION v. MRS. FRANCIS HORCAJO.

### No. 4025.

ARGUED APRIL 8, 1959.                    DECIDED MAY 27, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

These two cases were consolidated for trial and argument in the district court and likewise consolidated for argument in this court upon appeal.

The defendants-appellants were tenants and occupants of separate lots situated in the Hoolehua district of Molokai under Hawaiian Homes Commission leases. On January 16 and 18, 1956, the commission sent to each defendant, through registered mail, notices stating they were to appear at the commission's office in Hoolehua, Molokai, and show cause on February 3, 1956, why their respective leases should not be cancelled for failure to repay money advanced to them by way of loan. At this meeting evidence showed each of the defendants was in arrears and each promised to meet promptly his obligation. The leases were not then canceled nor was any action taken by the commission to forfeit their leases, nor was there any formal decision or postponement of a decision to cancel the leases, but apparently the tenants were warned and given a second chance to comply with their agreements. Thereafter, the defendant Mrs. Horcajo in May 1956 paid to the commission the sum of $5.00 toward the leasehold loan, which $5.00 was accepted by the commission without any reservation. Defendant Bush continued to be delinquent and did not make any payments on his loan.

Thereafter, on the 19th day of October, 1956, the commission had another meeting, no notice of which was given to the lessees, or either of them, and at which meeting neither of them was present. The project manager of the commission stated there were three cases needing immediate action by the commission, two of which concerned the defendants herein; it was stated the lessees had failed to meet their respective delinquent-account payments

regularly as promised, and thereupon the commission purported to cancel the respective leases "pursuant to the Hawaiian Homes Commission Act of 1920 as amended" and also pursuant to the provisions contained in the said leases for nonpayment by said lessees of their respective loans.

On October 22, 1956, letters were sent to each of the defendants notifying them of the action taken by the commission on October 19 "canceling" their lease agreements and requesting them to vacate the premises within 30 days. This the defendants failed to do. The commission thereby brought these summary possession proceedings against the defendants to regain possession of the premises. At a hearing before the district magistrate on February 18, 1957, he found as set forth above, and decided that the purported cancellations of leaseholds on the 19th day of October were valid, and ordered defendants to vacate the premises. From this decision the defendants have appealed to this court.

One of the points made by the appellants, that the district court had no jurisdiction over the action as the circuit courts alone have jurisdiction "of all suits for penalties and forfeitures incurred under the laws of the Territory" (R. L. H. 1945, § 9647, now R. L. H. 1955, § 215-17), is without merit as the actions involved are not suits for "forfeiture" but summary possession. The forfeitures, if any, were made by the commission for violation of the terms of the contract and thereafter the summary possession proceedings were brought. There could be no question that the district court is the proper place to file summary proceedings where the defendants have refused to vacate after proper forfeiture has been made of the leasehold interests.

The second question raised by appellants is that "the leases to the defendants had not been properly cancelled by the commission."

A forfeiture of leasehold may be by virtue of some clause in the lease providing for forfeiture in case of breach of covenant or condition. In the absence of such a stipulation, the general rule is that breach by the lessee of the covenants or stipulations contained in the lease does not work a forfeiture of the lease. "Moreover, the settled principle of both law and equity that contractual provisions for forfeitures are looked upon with disfavor applies

with full force to stipulations for forfeitures found in leases; such stipulations are not looked upon with favor by the court, but on the contrary are strictly construed against the party seeking to invoke them." (32 Am. Jur., *Landlord and Tenant*, § 848, pp. 720, 721.) See also *Von Hamm-Young* v. *Hawaii Garage, Limited,* 25 Haw. 253.

Both the leaseholds and the contracts of loan have provisions whereby the commission may declare the leaseholds forfeited, and section 210 of the Hawaiian Homes Commission Act provides for the cancellation of homestead leases as follows:

> "Whenever the commission has reason to believe that any condition enumerated in section 208, or any provision of section 209, of this title has been violated, the commission shall give due notice and afford opportunity for a hearing to the lessee of the tract in respect to which the alleged violation relates or to the successor of the lessee's interest therein, as the case demands. If upon such hearing the commission finds that the lessee or his successor has violated any condition in respect to the leasing of such tract, the commission may declare his interest in the tract and all improvements thereon to be forfeited and the lease in respect thereto canceled, and shall thereupon order the tract to be vacated within a reasonable time. The right to the use and occupancy of the Hawaiian home lands contained in such tract shall thereupon revest in the commission and the commission may take possession of the tract and the improvements thereon."

As stated above, "Covenants in a lease of land, upon the breach of which a forfeiture is claimed, must be strictly construed." (*Von Hamm-Young* v. *Hawaii Garage, Limited,* 25 Haw. 253.)

In the case of *Von Hamm-Young* v. *Hawaii Garage* the lease provided that the acceptance of rent by the lessor should not be deemed to be a waiver by it of any breach by the lessee of any covenant therein contained. After a breach of covenant by the lessee known to the lessor, the lessor accepted rent. It was held that this provision of the lease prevented the acceptance of rent from being a waiver of the breach of covenant but did not pre-

vent such acceptance from being a waiver of the right to declare a forfeiture for such breach. The *Von Hamm-Young* case quoted with approval the following from the *Elevator Case*, 17 Fed. 200:

"As a proposition pervading this doctrine of the right of re-entry by the forfeiture of a lease land, it is to be observed that the power to be exercised is a very strong power, and it is one which is exercised without the judgment of a court of justice or of anybody else but the party who is exercising it. The party determines for himself whether he has the right of reentry, without any resort to a court of justice. This is always a harsh power. It has always been considered that it was necessary to restrain it to the most technical limits of the terms and conditions upon which the right is to be exercised. Hence it is that the old common law provided in this class of contracts that it was the duty of the court to see that no injustice was done. It is reasonable, it is natural, that when a contract puts into the power of one man to say that under certain contingencies, of which he is to be the judge, he shall enter upon the house or home or property of another, and eject him instantly, and take possession,—it is reasonable, it is proper, that the contract and the acts which justify such a course of conduct should be construed rigidly against the exercise of the right."

In the present case the lessees were given an opportunity to be heard as required by statute but, as pointed out and as found by the magistrate, although the lessees were shown to be in default in failing to pay moneys advanced them by way of loan, no action was taken to cancel the leases, but each of the lessees promised to meet his obligation. Thereafter, in October, without any notice to the lessees of further hearing, the leases were declared forfeited. The question is, therefore, was the statute strictly complied with in taking the action of forfeiture?

In the case of Mrs. Horcajo, rental was received in May without any limitations placed upon such receipt. The usual rule is that the acceptance of remittance after knowledge of a breach of covenant constitutes a waiver of the right of forfeiture. (*Humphrey* v. *Humphrey*, 48 So. [2d] 424 [1950]; *Butterfield* v. *Duquesne*

*Mining Co.,* 182 P. [2d] 102 [1947]; *Stagecrafters' Club, Inc.* v. *District of Columbia Division of American Legion,* 110 F. Supp. 481 [1953], affirmed 211 F. [2d] 811.)

A landlord, accepting rental in arrears at the time of notice to tenant to vacate and rental thereafter accruing, waived right to further maintain pending forcible detainer action, and landlord was required to institute a new forcible detainer action after a subsequent default in payment of rental. (*Daily* v. *Kelly,* 304 Ky. 229, 200 S. W. [2d] 114 [1946].) To a like effect see *Canal Realty & Improvement Co.* v. *Pailet,* 217 La. 376, 46 So. (2d) 303 (1950), and *Signal Oil Co.* v. *Stebick,* 40 Wash. (2d) 599, 245 P. (2d) 217 (1952).

While as a general rule a waiver must be found as a matter of fact, when the facts are undisputed it may become a question of law. (*Rogers* v. *Whitney,* 91 Vt. 79, 99 A. 419 [1917], citing numerous cases; *Grippo* v. *Davis,* 92 Conn. 693, 104 A. 165 [1918]; *Swedish-American Bank of Minneapolis* v. *Koebernick,* 136 Wis. 473, 117 N. W. 1020 [1908].)

Thus, in the case of defendant Mrs. Horcajo it appears the commission by receiving payment waived its prior right of forfeiture and is compelled to institute a new proceeding if it desires to forfeit her lease.

The plaintiff made no default as to the defendant Louis Bush at the time of hearing nor did it as stated in the argument of counsel postpone decision and did not thereafter make any demands upon the defendant. As stated in *Johnston* v. *Hargrove,* 81 Va. 118:

> "By an ancient rule of the common law, before lessor can exercise a stipulated right of re-entry for breach of covenant to pay rent, he must make an actual demand upon the tenant for the payment thereof, unless by special agreement the requirement of demand has been dispensed with. The rule as respects the necessity for demand remains unaltered here by statute."

It was therein held that the landlord's action was not maintainable either at common law or under the statute.

Again, equity as a general rule will relieve the tenant for forfeiture arising from his failure to pay rent. This rule is based upon

the notion that such condition and forfeiture are intended merely as security for the payment of money. (2 Pomeroy's *Equity Jurisprudence,* 5th ed., § 453, p. 290, citing cases from the Supreme Court of the United States and from many States.)

In the case of defendant Louis Bush, "There is not that clear and distinct evidence that a declaration of forfeiture was rightfully made that the law undoubtedly requires." (*Palmer* v. *Ford,* 70 Ill. 369, and note in 16 A. L. R. 437 at p. 446.)

The commission may institute new proceedings at any time, giving proper notice of its intent to declare forfeitures unless the contracts be complied with.

Reversed.

*Arthur K. Trask* (also on the briefs) for appellant *Louis Bush* in Case No. 4024, and for appellant *Mrs. Francis Horcajo* in Case No. 4025.

*Kase Higa,* Special Deputy Attorney General (*Herbert Y. C. Choy,* Attorney General, with him on the brief), for appellee in Cases Nos. 4024 and 4025.